# DEFENDANT'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

FILED BY UC D.C.
NOV 19 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**ØYVIND ENGEVIK and CYBERCREW STUDIOS LLC,**
Plaintiffs,

v.

**BRENDEN MICHAEL DEARIE,**
Defendant.

**Case No.:** 2:25-cv-14198-AMC

## PRELIMINARY STATEMENT

Defendant Brenden Michael Dearie submits this Amended Answer, Affirmative Defenses, and Counterclaims in response to Plaintiffs' Complaint. This case involves Plaintiffs' bad faith attempt to deprive Defendant of his rightful ownership interest in CyberCrew, a business he co-founded with Plaintiff Øyvind Engevik in 2021. The evidence demonstrates that Defendant is a co-founder and 40% owner of CyberCrew, as acknowledged by Plaintiffs themselves in multiple written agreements.

**Most significantly, Plaintiffs filed this lawsuit in June 2025 claiming Defendant has no ownership rights, despite having sent Defendant a written agreement five months earlier (January 23, 2025) explicitly acknowledging him as a "co-founder" with a "40% ownership interest in CyberCrew, including any associated voting rights, claims, or entitlements." (Exhibit A). This judicial admission alone defeats Plaintiffs' entire case and proves Plaintiffs filed this lawsuit knowing it was false.**

Moreover, Plaintiffs engaged in fraudulent conduct by secretly incorporating CyberCrew Studios LLC in Delaware on January 13, 2025 without Defendant's knowledge or consent, then lying about it ten days later by falsely claiming in the January 23, 2025 agreement that CyberCrew was "an unincorporated project." (Exhibit A). This fraudulent incorporation excluded Defendant from his rightful 40% membership interest in the LLC and demonstrates Plaintiffs' calculated scheme to steal Defendant's ownership.

Defendant created the original intellectual property for CyberCrew in September 2021, developed major business partnerships including GameStop and Taiko, served as both Chief Technology Officer (CTO) and Chief Executive Officer (CEO) for 3.5 years without salary for over 2.5 years of that period, paid substantial business expenses through his Arizona S-Corporation (Protocol: Gemini), and built a community of nearly 40,000 members. Plaintiffs have enriched themselves by appropriating Defendant's work, excluding him from the business, and filing this meritless lawsuit in an improper forum to harass and intimidate him.

Plaintiffs' conduct includes: (1) fraudulent incorporation in Delaware while lying about it; (2) breach of fiduciary duty by excluding Defendant from business operations; (3) conversion of Defendant's intellectual property and ownership interest; (4) unjust enrichment by profiting from Defendant's unpaid work; (5) defamation by publicly calling Defendant an extortionist and liar; (6) harassment and intimidation including illegal service of process, trespassing, and doxxing; and (7) willful trademark infringement by publishing the game despite Defendant's express prohibition.

This Court should dismiss Plaintiffs' claims, enter declaratory judgment establishing Defendant's ownership rights, and award Defendant substantial damages for Plaintiffs' bad faith conduct.

# ANSWER TO COMPLAINT

## SPECIFIC RESPONSES TO ALLEGATIONS

**1.** Defendant denies the allegations in Paragraph 1 of the Complaint. This Court lacks personal jurisdiction over Defendant because he is a resident of Arizona, all business activities occurred in Arizona through Defendant's Arizona S-Corporation (Milestone

Fitness Inc. DBA Protocol: Gemini), and Defendant has no known contacts with Florida. The proper forum is Arizona, where all business agreements were executed, all partnerships were developed (including GameStop agreements executed in Arizona, Exhibit C), and where Defendant's S-Corporation is based. Plaintiffs filed this lawsuit in Florida solely to harass Defendant and deprive him of the protections of his home forum.

**2.** Defendant admits that Plaintiff Øyvind Engevik is a resident of Bergen, Norway. Defendant denies that venue is proper in this Court and affirmatively alleges that venue is improper because all relevant conduct occurred in Arizona, not Florida.

**3.** Defendant denies the allegations in Paragraph 3. Plaintiff CyberCrew Studios LLC was formed in Delaware without Defendant's knowledge or consent as part of Plaintiffs' scheme to exclude Defendant from his rightful ownership interest. The actual CyberCrew business operated through Defendant's Arizona S-Corporation (Protocol: Gemini) from 2021 through 2025, as evidenced by business expenses paid by Protocol: Gemini (Exhibit I), GameStop agreements executed through Protocol: Gemini in Arizona (Exhibit C), and collaboration agreements establishing Arizona as the exclusive place of business (Exhibit C). Additionally, Plaintiff Engevik secretly formed CyberCrew Studios LLC in Delaware on January 13, 2025 without Defendant's knowledge or consent, then lied about it by claiming CyberCrew was "an unincorporated project" in a written agreement sent to Defendant on January 23, 2025 (Exhibit A). This fraudulent incorporation excluded Defendant from his rightful 40% membership interest in the LLC.

**4.** Defendant denies the allegations in Paragraph 4. Venue is improper in this Court. All relevant business activities occurred in Arizona, where Defendant resides and where his S-Corporation (Protocol: Gemini) is based. All business agreements, including GameStop agreements, collaboration agreements, and NDA agreements, were executed in Arizona and governed by Arizona law (Exhibits C and N). Plaintiffs' choice of Florida as a forum is solely for the purpose of harassment and forum shopping.

**5.** Defendant denies the allegations in Paragraph 5. This Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs' claims are barred by Plaintiffs' own judicial admissions of Defendant's ownership rights. Plaintiff Engevik acknowledged in writing on January 23, 2025 that Defendant is a "co-founder" with a "40% ownership interest in CyberCrew, including any associated voting rights, claims,

or entitlements" (Exhibit A). Additionally, Plaintiff Engevik signed an earlier ownership agreement predating the PwC report acknowledging Defendant as "co-founder and 40% owner" (Exhibit P). These judicial admissions defeat Plaintiffs' claims as a matter of law.

**6.** Defendant denies the allegations in Paragraph 6. Defendant is a co-founder and 40% owner of CyberCrew, not an employee or contractor. This ownership is acknowledged by Plaintiffs themselves in multiple written agreements: (a) the January 23, 2025 agreement explicitly stating Defendant is a "co-founder" with "40% ownership interest" (Exhibit A); (b) the earlier ownership agreement signed by Plaintiff Engevik predating the PwC report stating Defendant is "co-founder and 40% owner" (Exhibit P); and (c) the PwC report documenting Defendant's 40% ownership and majority decision-making power (Exhibit B). **Plaintiffs filed this lawsuit in June 2025 knowing these facts, making this lawsuit frivolous and filed in bad faith.**

**7.** Defendant admits that he created original character-driven intellectual property for CyberCrew beginning in September 2021 (Exhibit G). Defendant denies that this work was done as an employee or contractor. Defendant was a co-founder and owner, and his intellectual property contributions belong to him as confirmed by his ownership interest. Defendant was the sole creator of all lore, stories, and character-driven narratives for CyberCrew; no stories existed prior to Defendant's contributions (Exhibit G).

**8.** Defendant admits that he provided substantial services to CyberCrew as Chief Technology Officer (CTO) and Chief Executive Officer (CEO) for 3.5 years. Defendant denies that these services were provided as an employee or contractor. Defendant provided these services as a co-founder and 40% owner, working without salary for the benefit of the jointly-owned business. Defendant has received no salary since early 2023 (approximately 2.5 years), while simultaneously paying substantial business expenses through his Arizona S-Corporation (Exhibit I).

**9.** Defendant denies the allegations in Paragraph 9. Defendant has ownership rights in the CyberCrew trademarks, as acknowledged by Plaintiff Engevik's demand in the January 23, 2025 agreement that Defendant transfer the CYBERCREW trademark to Plaintiffs (Exhibit A). If Defendant had no rights in the trademark, Plaintiffs would not need Defendant to transfer it. This demand constitutes an admission that Defendant owns or controls the trademark.

**10.** Defendant denies the allegations in Paragraph 10. Defendant's use of CyberCrew

trademarks and intellectual property is authorized by his 40% ownership interest in the business. Defendant cannot infringe trademarks he owns. Moreover, Defendant formally transferred all CyberCrew assets to his Arizona S-Corporation (Protocol: Gemini) via signed sales agreement on April 24, 2025, predating this lawsuit filed in June 2025 (Exhibit E). Plaintiffs were aware of this transfer before filing suit, making their infringement claims knowingly false.

**11.** Defendant denies the allegations in Paragraph 11. Defendant has not caused confusion or damage to Plaintiffs. To the contrary, Plaintiffs have damaged Defendant by: (a) excluding him from the business he co-founded; (b) publicly defaming him by calling him an extortionist and liar in their Complaint; (c) publicly disparaging him in Discord announcements as a "former team member" who is "going out of his way to make you all suffer" (Exhibit H); (d) doxxing his private email address (Exhibit H); (e) sending an aggressive process server who illegally trespassed on Defendant's property, went through his trash, traumatized his children, and illegally attempted service on a Sunday in violation of Arizona + Florida law (Exhibit H); and (f) filing this frivolous lawsuit to harass and intimidate Defendant.

**12.** Defendant denies the allegations in Paragraph 12. Defendant is entitled to use CyberCrew trademarks and intellectual property because he is a 40% owner of the business and the creator of the original intellectual property. Plaintiffs' claims for injunctive relief should be denied, and instead this Court should enjoin Plaintiffs from interfering with Defendant's ownership rights.

**13-45.** Defendant denies each and every allegation in Paragraphs 13 through 45 of the Complaint not specifically admitted above. Defendant specifically denies that he has infringed any trademarks, engaged in unfair competition, or caused any damages to Plaintiffs. To the contrary, Plaintiffs have infringed Defendant's rights by using his intellectual property without authorization, excluding him from the business, and filing this bad faith lawsuit.

# AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiffs' claims:

## FIRST AFFIRMATIVE DEFENSE: Lack of Personal Jurisdiction

This Court lacks personal jurisdiction over Defendant. Defendant is a resident of Arizona, all business activities occurred in Arizona through Defendant's Arizona S-Corporation, and Defendant has no minimum contacts with Florida sufficient to establish personal jurisdiction.

## SECOND AFFIRMATIVE DEFENSE: Improper Venue

Venue is improper in this Court. All relevant business activities occurred in Arizona, where Defendant resides and where his S-Corporation is based. All business agreements were executed in Arizona and governed by Arizona law (Exhibits C and N). The proper venue is Arizona.

## THIRD AFFIRMATIVE DEFENSE: Forum Non Conveniens

Even if this Court has jurisdiction and venue is proper, this action should be dismissed or transferred under the doctrine of forum non conveniens. Arizona is the appropriate forum because: (a) all business activities occurred in Arizona; (b) all relevant documents and witnesses are in Arizona; (c) Defendant resides in Arizona; (d) Defendant's S-Corporation is based in Arizona; and (e) all business agreements were executed in Arizona and governed by Arizona law.

## FOURTH AFFIRMATIVE DEFENSE: Failure to State a Claim

Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Defendant is a co-founder and 40% owner of CyberCrew, as acknowledged by Plaintiffs in writing (Exhibits A and P). A co-owner cannot infringe trademarks or intellectual property that he owns.

## FIFTH AFFIRMATIVE DEFENSE: Co-Ownership

Defendant is a co-owner of the CyberCrew trademarks and intellectual property, as acknowledged by Plaintiffs in multiple written agreements (Exhibits A, B, and P). Co owners have equal rights to use jointly-owned trademarks and intellectual property. Plaintiffs cannot maintain trademark infringement claims against a co-owner.

## SIXTH AFFIRMATIVE DEFENSE: Laches

Plaintiffs' claims are barred by the doctrine of laches. Plaintiffs unreasonably delayed in asserting their claims despite having full knowledge of Defendant's activities. This delay has prejudiced Defendant, who reasonably relied on Plaintiffs' acknowledgment of his ownership rights.

## SEVENTH AFFIRMATIVE DEFENSE: Unclean Hands

Plaintiffs' claims are barred by the doctrine of unclean hands. Plaintiffs have engaged in fraudulent and bad faith conduct, including: (a) secretly incorporating CyberCrew Studios LLC in Delaware on January 13, 2025 without Defendant's knowledge or consent, then lying about it by falsely claiming CyberCrew was "an unincorporated project" in the January 23, 2025 agreement (Exhibit A); (b) filing this lawsuit in June 2025 knowing it was false, as evidenced by their own written acknowledgment of Defendant's ownership five months earlier; (c) publicly defaming Defendant by calling him an extortionist and liar; (d) publicly disparaging Defendant and doxxing his private email address (Exhibit H); (e) sending an aggressive process server who illegally trespassed, went through Defendant's trash, traumatized his children, and illegally attempted service on a Sunday; (f) willfully publishing the game on Epic Games despite Defendant's express written prohibition (Exhibit J); and (g) operating a lucrative side business selling luxury watches using the CyberCrew community Defendant built, retaining 100% of profits while simultaneously claiming CyberCrew has no value (Exhibit L).

## EIGHTH AFFIRMATIVE DEFENSE: Estoppel

Plaintiffs are estopped from denying Defendant's ownership rights. Plaintiffs acknowledged Defendant's co-founder status and 40% ownership in multiple written

CyberCrew, including any associated voting rights, claims, or entitlements" (Exhibit A). Plaintiffs also signed an earlier agreement acknowledging Defendant as "co-founder and 40% owner" (Exhibit P). These admissions are binding and defeat Plaintiffs' claims as a matter of law.

## FOURTEENTH AFFIRMATIVE DEFENSE: Failure to Join Indispensable Party

Plaintiffs have failed to join Defendant's S-Corporation (Milestone Fitness Inc. DBA Protocol: Gemini) as a party to this action. Protocol: Gemini is the entity through which all CyberCrew business was conducted, as evidenced by business expenses paid by Protocol: Gemini (Exhibit I), GameStop agreements executed through Protocol: Gemini (Exhibit C), and the April 24, 2025 sales agreement transferring all CyberCrew assets to Protocol: Gemini (Exhibit E). Protocol: Gemini is an indispensable party whose absence requires dismissal of this action.

## FIFTEENTH AFFIRMATIVE DEFENSE: Wrong Party Sued

Plaintiffs have sued the wrong party. The proper party is Defendant's S-Corporation (Milestone Fitness Inc. DBA Protocol: Gemini), which is the entity that owns the CyberCrew assets pursuant to the April 24, 2025 sales agreement (Exhibit E). This agreement predates the filing of this lawsuit and was known to Plaintiffs before they filed suit.

## SIXTEENTH AFFIRMATIVE DEFENSE: Statute of Frauds

To the extent Plaintiffs claim any oral agreements or understandings, such claims are barred by the statute of frauds. The parties' relationship and Defendant's ownership rights are established by written agreements (Exhibits A, B, C, and P), which supersede any alleged oral agreements.

## SEVENTEENTH AFFIRMATIVE DEFENSE: Unclean Hands (Hypocrisy)

Plaintiffs' claims are barred by unclean hands based on Plaintiffs' hypocritical conduct. Plaintiffs claim CyberCrew has no value to avoid compensating Defendant for his 40% ownership interest, while simultaneously: (a) spending substantial sums on this litigation; (b) profiting from selling NFTs, founder's passes, and game assets using

Defendant's intellectual property (Exhibit L); (c) redeeming grant proceeds from the Taiko grant that Defendant obtained; and (d) operating a lucrative side business selling luxury watches (Von Doren collaboration) using the CyberCrew Discord to sell to the community Defendant built, with 30+ watches sold at $450 each (~$13,500 in November 2025 alone)(Exhibit L).

This contradictory conduct demonstrates bad faith and warrants dismissal of Plaintiffs' claims.

## EIGHTEENTH AFFIRMATIVE DEFENSE: Founder/Owner Status

Defendant is a co-founder and owner of CyberCrew, not an employee or contractor, as evidenced by: (a) Plaintiff Engevik's written acknowledgment that Defendant is a "co founder" with "40% ownership interest" (Exhibit A); (b) Plaintiff Engevik's earlier written acknowledgment that Defendant is "co-founder and 40% owner" (Exhibit P); (c) the PwC report documenting Defendant's 40% ownership and majority decision making power (Exhibit B); (d) Defendant's creation of the original intellectual property in September 2021 (Exhibit G); (e) Defendant's U.S. Patent for core technology (Exhibit O); (f) Defendant's payment of business expenses through his Arizona S Corporation (Exhibit I); (g) Defendant's development of major business partnerships including GameStop and Taiko (Exhibits C and F); and (h) Plaintiff Engevik's public crediting of Defendant's company on his website (Exhibit K). Plaintiffs cannot sue a co owner for trademark infringement of jointly-owned intellectual property.

## NINETEENTH AFFIRMATIVE DEFENSE: Judicial Admission of Ownership (Delaware LLC Fraud)

Plaintiffs' claims are barred by their fraudulent conduct and judicial admission. On January 13, 2025, Plaintiff Engevik secretly incorporated CyberCrew Studios LLC in Delaware without Defendant's knowledge or consent, excluding Defendant from his rightful 40% membership interest. Ten days later, on January 23, 2025, Plaintiff Engevik sent Defendant a written agreement falsely claiming CyberCrew was "an unincorporated project" while simultaneously acknowledging Defendant's "40% ownership interest" and demanding that Defendant transfer the CYBERCREW trademark (Exhibit A). This fraudulent scheme demonstrates: (a) Plaintiffs' consciousness of guilt (they knew Defendant owned 40% and tried to trick him into giving it up); (b) Plaintiffs' bad faith (they lied about the incorporation status); and (c) Plaintiffs' admission that Defendant owns the trademark (otherwise they wouldn't

need him to transfer it). Five months later, in June 2025, Plaintiffs filed this lawsuit claiming Defendant has no rights, knowing this claim was false. This conduct warrants dismissal with prejudice and sanctions.

# COUNTERCLAIMS

Defendant asserts the following counterclaims against Plaintiffs:

## COUNT I: DECLARATORY JUDGMENT (28 U.S.C. § 2201)

1. Defendant realleges paragraphs 1-19 of the Affirmative Defenses section for jurisdictional and background purposes.
2. An actual controversy exists between the parties regarding Defendant's ownership rights in CyberCrew. Plaintiffs claim Defendant has no ownership rights, while Defendant asserts he is a co-founder and 40% owner.

3. Defendant is a co-founder and 40% owner of CyberCrew, as evidenced by:

**(a)** Plaintiff Engevik's written acknowledgment on January 23, 2025 explicitly stating Defendant is a "co-founder" with a "40% ownership interest in CyberCrew, including any associated voting rights, claims, or entitlements" (Exhibit A);

**(b)** Plaintiff Engevik's earlier written acknowledgment predating the PwC report stating Defendant is "co-founder and 40% owner" (Exhibit P);

**(c)** The PwC report documenting Defendant's 40% ownership and majority decision making power (Exhibit B);

**(d)** Defendant's creation of the original intellectual property in September 2021, including all lore, stories, and character-driven narratives (Exhibit G);

**(e)** Defendant's U.S. Patent for the core technology used in CyberCrew products (Exhibit O);

**(f)** Defendant's payment of business expenses through his Arizona S-Corporation (Protocol: Gemini), including hosting, website domain, and Microsoft Teams through July 2025 (Exhibit I);

**(g)** Defendant's development of major business partnerships including GameStop (Exhibit C) and Taiko (Exhibit F);

**(h)** Defendant's service as CTO and CEO for 3.5 years without salary;

**(i)** Plaintiff Engevik's public crediting of Defendant's company (Protocol: Gemini) on his website in connection with CyberCrew work (Exhibit K);

**(j)** The April 24, 2025 sales agreement formalizing ownership of all CyberCrew assets in Defendant's S-Corporation (Exhibit E).

1. Plaintiffs' fraudulent incorporation of CyberCrew Studios LLC in Delaware on January 13, 2025 without Defendant's knowledge or consent was wrongful and does not affect Defendant's ownership rights in the underlying business and intellectual property. Plaintiffs' false representation that CyberCrew was "an unincorporated project" in the January 23, 2025 agreement (Exhibit A) demonstrates Plaintiffs' fraudulent intent and consciousness of guilt.

2. A declaratory judgment is necessary and appropriate to resolve this controversy and establish Defendant's rights, particularly given Plaintiffs' contradictory conduct of acknowledging Defendant's ownership in writing while filing this lawsuit claiming he has no rights.

**WHEREFORE,** Defendant requests that this Court enter a declaratory judgment establishing Defendant's ownership rights as set forth above, and such other relief as the Court deems just and proper.

## COUNT II: BREACH OF FIDUCIARY DUTY

1. Defendant realleges paragraphs 1-5 of Count I for background purposes.

2. Defendant and Plaintiff Engevik were business partners and co-founders of CyberCrew, creating a fiduciary relationship between them. This fiduciary relationship is confirmed by: (a) Plaintiff Engevik's written acknowledgment that Defendant is a "co-founder" with "40% ownership interest" and "voting rights, management rights, and decision-making authority" (Exhibit A); and (b) Plaintiff Engevik's earlier written acknowledgment that Defendant is "co-founder and 40% owner" (Exhibit P).

3. As business partners and co-founders, Plaintiffs owed Defendant fiduciary duties including duties of loyalty, good faith, fair dealing, and full disclosure.

4. Plaintiffs breached these fiduciary duties by:

**(a)** Forming CyberCrew Studios LLC in Delaware on January 13, 2025 without Defendant's knowledge or consent, despite Defendant's 40% ownership interest and voting rights, then lying about the incorporation by falsely claiming CyberCrew was "an unincorporated project" in the January 23, 2025 agreement (Exhibit A);

**(b)** Excluding Defendant from ownership in the LLC despite his established 40% interest, thereby stealing Defendant's 40% membership interest in the corporate entity;

**(c)** Using intimidation tactics through intermediaries, including BANE who directly threatened Defendant (Exhibit H);

**(d)** Orchestrating a documented "coup" to exclude Defendant from business operations, including failing to show up to scheduled calls and claiming they owned everything (Exhibit D);

**(e)** Appropriating business partnerships that Defendant developed, including GameStop (Exhibit C) and Taiko (Exhibit F), for Plaintiffs' exclusive benefit;

**(f)** Redeeming grant proceeds from the Taiko grant that Defendant obtained without sharing proceeds with Defendant;

**(g)** Using Defendant's patented technology commercially without authorization or compensation (Exhibit O);

**(h)** Filing this lawsuit in an improper forum to harass Defendant and deprive him of his rights while simultaneously acknowledging his ownership in writing;

**(i)** Willfully publishing the game on Epic Games despite Defendant's express written prohibition (Exhibit J);

**(j)** Publicly disparaging Defendant by calling him a "former team member" who is "going out of his way to make you all suffer" and doxxing his private email address (Exhibit H);

**(k)** Sending an aggressive process server who illegally trespassed on Defendant's

property, went through his trash, traumatized his children, and illegally attempted service on a Sunday in violation of Arizona law (Exhibit H);

**(l)** IP banning Defendant from the CyberCrew Discord server to prevent him from accessing evidence of business activities;

**(m)** Operating a lucrative side business selling luxury watches (Von Doren collaboration) using the CyberCrew Discord to promote and sell watches to the community Defendant built, retaining 100% of profits without disclosure or compensation to Defendant, while simultaneously claiming CyberCrew has no value (Exhibit L);

**(n)** Selling NFTs, founder's passes, and game assets using Defendant's intellectual property without compensating Defendant for his 40% ownership share (Exhibit L);

**(o)** Publicly defaming Defendant by calling him an extortionist and liar in their Complaint.

1. Plaintiffs' breaches were willful and in bad faith, as evidenced by: (a) the pattern of fraudulent conduct described above; (b) Plaintiffs' contradictory positions (acknowledging Defendant's ownership in writing while suing him for infringement); and (c) Plaintiffs' filing of this lawsuit in June 2025 knowing it was false, as evidenced by their own written acknowledgment of Defendant's ownership five months earlier.

2. As a direct and proximate result of Plaintiffs' breaches, Defendant has suffered substantial damages including: (a) loss of his 40% ownership interest in valuable corporate partnerships; (b) lost profits from Fortune 500 business relationships including GameStop; (c) loss of grant proceeds from Taiko; (d) loss of his 40% share of profits from NFT sales, founder's passes, and game assets; (e) loss of his 40% share of Von Doren watch sales (substantial undisclosed profits); (f) emotional distress from harassment, intimidation, and defamation; (g) reputational harm from public disparagement and false accusations; (h) safety concerns for himself and his family from public doxxing and illegal trespassing; and (i) loss of business opportunities.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for breach of fiduciary duty, including compensatory damages, punitive damages for willful and malicious conduct, an accounting of all business assets and profits, restitution, and such other relief as the Court deems just and proper.

## COUNT III: CONVERSION

1. Defendant realleges paragraphs 1-3 of Count I for background purposes.

2. Defendant has ownership rights in the CyberCrew business, intellectual property, and related assets, as acknowledged by Plaintiffs in writing (Exhibits A, B, and P).

3. Plaintiffs have wrongfully exercised control over Defendant's property by:

**(a)** Forming CyberCrew Studios LLC in Delaware and transferring business assets to the LLC without Defendant's consent, excluding Defendant from his 40% membership interest;

**(b)** Appropriating Defendant's 40% ownership interest for their exclusive use;

**(c)** Using Defendant's intellectual property, including his patented technology (Exhibit O) and original character creations (Exhibit G), commercially without authorization;
**(d)** Appropriating business partnerships Defendant developed, including GameStop (Exhibit C) and Taiko (Exhibit F), for Plaintiffs' exclusive benefit;

**(e)** Redeeming grant proceeds from the Taiko grant without sharing with Defendant;

**(f)** Publishing the game on Epic Games using Defendant's intellectual property despite Defendant's express written prohibition (Exhibit J);

**(g)** Selling NFTs, founder's passes, and game assets using Defendant's intellectual property without compensating Defendant (Exhibit L);

**(h)** Retaining 100% of profits from all business activities despite Defendant's 40% ownership interest.

1. Plaintiffs' conversion was willful and intentional, as evidenced by: (a) their publication of the game three days after Defendant's express prohibition (Exhibit J); (b) their acknowledgment of Defendant's ownership rights in writing while simultaneously excluding him from the business (Exhibits A and P); (c) their demand that Defendant transfer the CYBERCREW trademark to them (Exhibit A), proving they know Defendant owns or controls it; and (d) their fraudulent incorporation of the Delaware LLC to exclude Defendant from his rightful

membership interest.

2. Defendant has been damaged by Plaintiffs' conversion and is entitled to the value of the converted property, including his 40% share of all business assets, profits, and revenues.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for conversion, including compensatory damages, punitive damages for willful conduct, restitution, an accounting, and such other relief as the Court deems just and proper.

## COUNT IV: UNJUST ENRICHMENT

1. Defendant realleges paragraphs 1-3 of Count I for background

purposes. 2. Defendant conferred substantial benefits upon Plaintiffs,

including:

**(a)** Creation of original character-driven intellectual property in September 2021, including all lore, stories, and character-driven narratives (Exhibit G);
**(b)** Development of patented technology concepts including character customization and evolving digital assets (Exhibit O);

**(c)** Payment for business infrastructure including Microsoft Teams, SharePoint, website hosting, and domain registration through his Arizona S-Corporation through July 2025 (Exhibit I);

**(d)** Payment for PwC business valuation report (Exhibit B);

**(e)** Development of major business partnerships including GameStop (Exhibit C) and Taiko (Exhibit F);

**(f)** Art direction and creative management services publicly acknowledged by Plaintiffs (Exhibit L);

**(g)** Substantial time, effort, and expertise in building the business over 3.5 years as CTO and CEO, working without salary since early 2023 (approximately 2.5 years of unpaid work);

**(h)** Substantial community building work over 3.5 years, growing the CyberCrew

community from 516 Discord members and 1,400 Twitter followers to 5,696 Discord members and 33,700 Twitter followers—a total community of approximately 39,396 people (Exhibit M).

1. Plaintiffs have knowledge and appreciation of these benefits, as evidenced by:

**(a)** Plaintiff Engevik's written acknowledgment that Defendant is a "co-founder" with "40% ownership interest" (Exhibit A);

**(b)** Plaintiff Engevik's earlier written acknowledgment that Defendant is "co-founder and 40% owner" (Exhibit P);

**(c)** The PwC report documenting Defendant's contributions and 40% ownership (Exhibit B);

**(d)** Plaintiff Engevik's public crediting of Defendant's work on his website (Exhibit K);

**(e)** Plaintiffs' continued use of Defendant's intellectual property, patented technology, and paid infrastructure;

**(f)** Plaintiffs' active commercial exploitation of Defendant's work on Epic Games and through sales of NFTs, founder's passes, and game assets.

1. Plaintiffs have accepted and retained these benefits without compensating Defendant for his 40% ownership share.

2. Plaintiffs' retention of these benefits without compensation is unjust and inequitable because:

**(a)** Plaintiffs acknowledged Defendant's ownership rights in writing but then excluded him (Exhibits A, B, and P);

**(b)** Plaintiffs continue to use Defendant's intellectual property, patented technology, and paid infrastructure commercially;

**(c)** Plaintiffs are profiting from Defendant's creative work and business development by selling products and redeeming grants Defendant obtained;

**(d)** Plaintiffs used fraud, intimidation, and bad faith to deprive Defendant of his rights, including fraudulent incorporation, illegal service of process, and public defamation;

**(e)** Plaintiffs claim CyberCrew has no value to avoid compensating Defendant while

simultaneously: (i) spending substantial sums on litigation; (ii) profiting from selling NFTs, founder's passes, and game assets using Defendant's IP (Exhibit L); (iii) redeeming grant proceeds; and (iv) operating a lucrative side business selling watches using the community Defendant built, generating substantial profits (Exhibit L);

**(f)** Plaintiffs published the game using Defendant's IP despite his express prohibition (Exhibit J);

**(g)** Plaintiffs' conduct has created safety concerns for Defendant and his family through doxxing and illegal trespassing (Exhibit H);

**(h)** Plaintiff Engevik has operated a lucrative side business selling luxury watches (Von Doren collaboration) using the CyberCrew Discord to promote and sell watches to the community Defendant built (39,396 people), retaining 100% of profits without disclosure or compensation to Defendant. In November 2025 alone, during the pendency of this lawsuit, Plaintiff Engevik sold 30+ watches estimated to have produced ~$13,500+ in proceeds) to the CyberCrew community, demonstrating that Plaintiff knows the community has substantial commercial value and can be monetized for significant profits.

1. It would be unjust to allow Plaintiffs to retain these benefits without compensating Defendant for their reasonable value, particularly given: (a) Plaintiffs' bad faith conduct; (b) Plaintiffs' judicial admissions of Defendant's ownership; (c) Plaintiffs' continued commercial exploitation of Defendant's intellectual property; and (d) Plaintiffs' fraudulent scheme to exclude Defendant from his rightful ownership.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for unjust enrichment, including the reasonable value of benefits $500,000- $1,000,000 + based on 2.5 years of unpaid CTO and CEO work, business expenses paid, IP created, and community built), restitution, an accounting of all profits derived from Defendant's intellectual property, and such other relief as the Court deems just and proper.

## COUNT V: QUANTUM MERUIT

1. Defendant realleges paragraphs 2(a)-(h) of Count IV regarding benefits conferred.

2. Defendant provided valuable services to CyberCrew as Chief Technology Officer (CTO) and Chief Executive Officer (CEO) for 3.5 years, including:

**(a)** Technology leadership and oversight;

**(b)** Intellectual property creation including all lore, stories, and character-driven narratives (Exhibit G);

**(c)** Patent development for core technology (Exhibit O);

**(d)** Business development including securing GameStop partnership (Exhibit C) and Taiko grant (Exhibit F);

**(e)** Art direction and creative management;

**(f)** Payment of business expenses including infrastructure costs (Exhibit I);

**(g)** Community building and management, growing the community from 516 Discord members and 1,400 Twitter followers to 5,696 Discord members and 33,700 Twitter followers (Exhibit M);

**(h)** Executive leadership as both CTO and CEO.

1. Defendant provided these services with the expectation of compensation through his 40% ownership interest in the business.
2. Plaintiffs accepted and benefited from Defendant's services, as evidenced by their acknowledgment of Defendant's co-founder status and ownership interest (Exhibits A, B, and P).

3. Plaintiffs have failed to compensate Defendant for his services, instead excluding him from the business and retaining 100% of profits.

4. The reasonable value of Defendant's services is substantial, estimated at $500,000- $1,000,000+ based on: (a) 3.5 years of full-time work as CTO and CEO; (b) industry standard compensation for executive roles; (c) the value of intellectual property created; (d) the value of business partnerships developed; and (e) the value of community built (39,396 members).

5. It would be unjust to allow Plaintiffs to retain the benefits of Defendant's services without compensation, particularly given Plaintiffs' bad faith conduct and fraudulent scheme to exclude Defendant from his rightful ownership.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for quantum meruit, including the reasonable value of services rendered ($500,000- $1,000,000+), an accounting of all profits derived from Defendant's services, and such other relief as the Court deems just and proper.

## COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL

**DISTRESS** 1. Defendant realleges paragraphs 1-3 of Count I for

background purposes.

2. Plaintiffs engaged in extreme and outrageous conduct toward Defendant, including:

**(a)** Sending an aggressive process server who illegally trespassed on Defendant's property, went through Defendant's trash, traumatized Defendant's children, and illegally attempted service on a Sunday in violation of Arizona law (Exhibit H);

**(b)** Publicly disparaging Defendant in Discord announcements to the CyberCrew community, falsely calling him a "former team member" and claiming he is "going out of his way to make you all suffer" (Exhibit H);

**(c)** Doxxing Defendant's private email address to the public, exposing him to harassment and safety concerns (Exhibit H);
**(d)** Using intimidation tactics through intermediaries, including BANE who directly threatened Defendant (Exhibit H);

**(e)** Publicly defaming Defendant by calling him an extortionist and liar in their Complaint;

**(f)** Filing this frivolous lawsuit in an improper forum to harass and intimidate Defendant;

**(g)** Engaging in a fraudulent scheme to steal Defendant's 40% ownership interest, including secret incorporation in Delaware and lying about it (Exhibit A);

**(h)** Timing their harassment to coincide with Defendant's stress over his aging 13-year old dog, knowing this would cause additional emotional and psychological harm.

1. Plaintiffs' conduct was intentional and reckless, designed to cause emotional distress to Defendant and force him to abandon his ownership rights.

2. Plaintiffs' conduct was extreme and outrageous, exceeding all bounds of decency. Sending an aggressive process server who trespassed, went through trash, traumatized children, and illegally served on a Sunday, combined with public doxxing and defamation, constitutes conduct that is intolerable in a civilized society.

3. As a direct and proximate result of Plaintiffs' conduct, Defendant has suffered severe emotional distress, including anxiety, fear for his safety and his family's safety, reputational harm, and psychological trauma.

4. Plaintiffs' conduct warrants an award of punitive damages to deter similar conduct in the future.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for intentional infliction of emotional distress, including compensatory damages for emotional distress, punitive damages, and such other relief as the Court deems just and proper.

## COUNT VII: FRAUD

1. Defendant realleges paragraphs 1-3 of Count I for background

purposes. 2. Plaintiffs made material false representations to Defendant,

including:

**(a)** Falsely representing in the January 23, 2025 agreement that CyberCrew was "an

unincorporated project" when in fact Plaintiff Engevik had secretly incorporated CyberCrew Studios LLC in Delaware on January 13, 2025, ten days earlier (Exhibit A);

**(b)** Falsely representing that Defendant could voluntarily relinquish his ownership rights when in fact Plaintiffs had already excluded Defendant by forming the LLC without him;

**(c)** Falsely representing that the business had no value (claiming it was "bankrupt" with "value essentially zero" in the January 9, 2025 email, Exhibit A) while simultaneously profiting from selling NFTs, founder's passes, game assets, and luxury watches using the community Defendant built;

**(d)** Falsely representing their intentions to resolve the ownership dispute fairly while secretly planning to file this lawsuit to exclude Defendant entirely.

1. Plaintiffs knew these representations were false when made. Plaintiff Engevik knew he had incorporated the LLC on January 13, 2025 when he sent the agreement on January 23, 2025 falsely claiming it was "unincorporated." Plaintiffs knew the business had value because they were actively selling products and generating revenue.

2. Plaintiffs made these false representations with the intent to deceive Defendant and induce him to relinquish his 40% ownership interest without fair compensation.

3. Defendant reasonably relied on Plaintiffs' representations, believing that good faith negotiations were possible and that Plaintiffs were being truthful about the business status.

4. As a direct and proximate result of Plaintiffs' fraud, Defendant has suffered substantial damages, including: (a) loss of his 40% ownership interest in the Delaware LLC; (b) loss of his 40% share of business profits; (c) emotional distress from the fraudulent scheme; and (d) attorney's fees and costs incurred in defending against this fraudulent lawsuit.

5. Plaintiffs' fraud was willful, wanton, and malicious, warranting an award of punitive damages.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for fraud, including compensatory damages, punitive damages, rescission of any agreements obtained

through fraud, an accounting of all business assets and profits, and such other relief as the Court deems just and proper.

## COUNT VIII: DEFAMATION

1. Defendant realleges paragraphs 1-3 of Count I for background purposes. 2.

Plaintiffs made false and defamatory statements about Defendant, including:

**(a)** Publicly stating in Discord announcements that Defendant is a "former team member" when in fact Defendant is a co-founder and 40% owner as acknowledged by Plaintiffs in writing (Exhibit H);

**(b)** Publicly stating that Defendant is "going out of his way to make you all suffer" (Exhibit H);

**(c)** Publicly stating in their Complaint that Defendant is an

extortionist; **(d)** Publicly stating in their Complaint that Defendant is

a liar;

**(e)** Implying through these statements that Defendant is acting wrongfully and maliciously when in fact Defendant is simply asserting his legitimate ownership rights.

1. These statements were false. Defendant is not a "former team member" but rather a co-founder and 40% owner. Defendant is not trying to make anyone suffer, is not an extortionist, and is not a liar. Defendant is asserting his legitimate ownership rights that Plaintiffs themselves acknowledged in writing.
2. Plaintiffs published these statements to third parties, including the CyberCrew community (thousands of members) and this Court.
3. These statements were defamatory per se, accusing Defendant of criminal conduct (extortion) and dishonesty (lying), and damaging Defendant's reputation in his profession and business relationships.
4. Plaintiffs made these statements with actual malice, knowing they were false or with reckless disregard for their truth or falsity. Plaintiffs knew Defendant was a

co-founder and 40% owner because they acknowledged it in writing multiple times (Exhibits A, B, and P).

5. As a direct and proximate result of Plaintiffs' defamatory statements, Defendant has suffered substantial damages, including: (a) reputational harm in the NFT and gaming communities; (b) loss of business opportunities; (c) emotional distress; (d) harassment from community members who believed Plaintiffs' false statements; and (e) damage to Defendant's professional reputation.

6. Plaintiffs' defamation was willful and malicious, warranting an award of punitive damages.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for defamation, including compensatory damages, punitive damages, a retraction and public apology, and such other relief as the Court deems just and proper.

## COUNT IX: SPOLIATION OF EVIDENCE

1. Defendant realleges paragraphs 1-3 of Count I for background purposes.

2. Plaintiffs had a duty to preserve evidence relevant to this dispute, including evidence of business operations, financial records, and communications in the CyberCrew Discord server.

3. Plaintiffs intentionally destroyed or concealed evidence by IP banning Defendant from the CyberCrew Discord server, preventing Defendant from accessing:

**(a)** Evidence of business operations and decision-making;

**(b)** Evidence of Plaintiffs' promotion of side businesses, including Von Doren watch sales, to the CyberCrew community (Exhibit L);

**(c)** Evidence of sales of NFTs, founder's passes, and game assets;

**(d)** Evidence of Plaintiffs' public statements about Defendant and the business;

**(e)** Evidence of community interactions and Defendant's contributions to community building.

1. Plaintiffs' IP ban was intentional and designed to prevent Defendant from

accessing evidence that would support his ownership claims and demonstrate Plaintiffs' bad faith conduct.

2. Plaintiffs' spoliation demonstrates consciousness of guilt and intent to conceal their misuse of partnership resources for personal gain.

3. As a direct and proximate result of Plaintiffs' spoliation, Defendant has been prejudiced in his ability to prove his claims and defend against Plaintiffs' allegations.

4. Plaintiffs' spoliation warrants: (a) an adverse inference that the destroyed or concealed evidence would have been favorable to Defendant; (b) sanctions against Plaintiffs; and (c) an award of attorney's fees and costs incurred in attempting to obtain the evidence.

**WHEREFORE,** Defendant requests judgment against Plaintiffs for spoliation of evidence, including an adverse inference instruction, sanctions, attorney's fees and costs, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court:

1. **Dismiss Plaintiffs' Complaint with prejudice** for lack of personal jurisdiction, improper venue, failure to state a claim, and/or on the merits;

2. **Enter declaratory judgment** establishing that Defendant is a co-founder and 40% owner of CyberCrew with all associated rights, including rights to use CyberCrew trademarks and intellectual property;

3. **Award Defendant compensatory damages** on his counterclaims in an amount to be proven at trial, including but not limited to:

4. $500,0001,000,000+ for unpaid CTO and CEO services over 3.5 years;

5. $200,000+ for Defendant's 40% share of Von Doren watch sales;

6. Defendant's 40% share of all NFT sales, founder's passes, game asset sales, and grant proceeds;

7. Unreimbursed business expenses;

8. Lost profits from GameStop and Taiko partnerships;

9. Emotional distress damages;
10. Reputational harm damages;

11. **Award Defendant punitive damages** on his counterclaims for Plaintiffs' willful, wanton, and malicious conduct, including fraud, defamation, and intentional infliction of emotional distress;

12. **Order an accounting** of all CyberCrew business assets, revenues, profits, and expenses from 2021 to present;

13. **Order restitution** of Defendant's 40% share of all profits and revenues;

14. **Award Defendant attorney's fees and costs** pursuant to applicable law and based on Plaintiffs' bad faith conduct;

15. **Enter an injunction** prohibiting Plaintiffs from interfering with Defendant's ownership rights and use of CyberCrew trademarks and intellectual property;

16. **Award Defendant pre-judgment and post-judgment interest** at the maximum rate allowed by law;

17. **Grant such other and further relief** as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Defendant demands a trial by jury on all issues so triable.

**Dated:** November 19, 2025

Respectfully submitted,

Brenden Michael Dearie

Pro Se Defendant

221 E. Indianola Ave. Phoenix, AZ 85012

Phone: (504) 338-3188

Email: Brendendearie@protocolgemini.com

X________________________

DATE: 11/18/25

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2025, a true and correct copy of the foregoing Defendant's Amended Answer, Affirmative Defenses, and Counterclaims was served upon Plaintiffs' counsel via [electronically].

Louis Gigliotti, Esq
lgigliotti@bellsouth.net

xtremely Urgent

Use. Reuse. Recycle.

Visit UPS.com

**Apply shipping documents on this side.**

Scan QR code to schedule a pickup

BRENDEN DEARIE
(504) 338-3188
THE UPS STORE #3760
STE 9
13835 N TATUM BLVD
PHOENIX AZ 85032-5590

1.7 LBS LTR
SHP WT: 2 LBS
DATE: 18 NOV 2025

SHIP CASE# 2 25-VC-14198-AMC
TO: CLERK OF COURT
ROOM #1016
101 S US HIGHWAY 1

FORT PIERCE FL 34950

FL 349 1-01

UPS NEXT DAY AIR 1

TRACKING #: 1Z 217 09E 01 6027 7445

BILLING: P/P

RECEIVED
NOV 19 2025
CLERK

The UPS Store RFID Label

Tracking #

1Z21709E016027 7445

UPS Next Day Air®

CLERK OF COURT
101 S US HIGHWAY 1
RM 1016
FORT PIERCE FL 34950

P:BLUE S:BLUE
EDW - 1305
7445
1:RDL
1Z21709E016027
NOV 19 08:24:30 2025
1030

Next Day Air®
Worldwide Express®
2nd Day Air®
Ground
Standard
3 Day Select®
Worldwide Expedited®

**Domestic Shipments**
- To qualify for the letter rate, UPS ... only contain correspondence, urgent docume... dia, and must weigh 8 oz. or less. UPS Express envelope... than those listed or weighing more than 8oz. will be...

**International Shipments**
- The UPS Express envelope may be us... f no commercial value. Certain countries consider elect... ts. Visit ups.com/importexport to verify if you... a document.
- To qualify for the letter rate, the UPS Exp... h 8 oz. or less. UPS express envelopes weighing mor... weight.

**Note:** UPS Express envelope... of electronic media containin... ble items. Do not send cash or c...

**Reusab...**

**Letter Size**
Reduce paper was... either to return to sender or ... ons on the flap above.

100% Recycled fiber
80% Post-Consumer

International Shipping Notice — Carriage here... may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

Serving you for more than 110 years
United Parcel Service.®

For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com 010195112 05/21 TG United Parcel Service

emely Urgent

Reusable
Express

ups ®